UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHAPEL RIDGE INVESTMENTS, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:13-cv-00146-PPS |
| ) | |
| PETLAND LEASEHOLDING COMPANY,) | |
| INC., an Ohio Corporation, THE ) | |
| UNKNOWN OFFICERS, DIRECTORS ) | |
| AND SHAREHOLDERS OF PETLAND ) | |
| LEASEHOLDING COMPANY, INC., ) | |
| an Ohio Corporation, and PETLAND INC., ) | |
| an Ohio Corporation, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER
## GRANTING MOTION TO AMEND AND DENYING MOTION TO DISMISS

This case involves an alleged breach of a lease agreement. One defendant, Petland, Inc., seeks dismissal for failure to state a claim. Plaintiff Chapel Ridge Investments sought leave to file an amended complaint to cure some of the deficiencies that Petland pointed out, but Petland says that it is pointless to allow Chapel Ridge to amend the complaint because the amended complaint that they propose is also subject to dismissal. Because the Proposed Amended Complaint states plausible claims for relief, the amendment isn't futile. I will therefore **GRANT** Chapel Ridge's Motion for Leave to File Amended Complaint (DE 30), and **DENY** Petland's Motion to Dismiss for Failure to State a Claim (DE 12).

**Factual Background**

Plaintiff Chapel Ridge Investments owns a shopping center in Fort Wayne. In 2009 it agreed to lease to Petland Leaseholding Company, Inc. a portion of the shopping center. The lease was for a ten year term. Petland, Inc., whose name is not on the lease, is the sole

shareholder of Petland Leaseholding. To distinguish between Petland Leaseholding on the one hand, and Petland, Inc. on the other, I will refer to the former in this opinion as "PLC" and the latter as simply "Petland." Even though the lease was signed by PLC, Petland is the entity that actually operated the store in the space rented from Chapel Ridge, and Petland is the entity that paid the rent each month. At the end of 2012, however, the rent payments stopped, and Petland moved out shortly thereafter.

In its proposed amended complaint, Chapel Ridge sues PLC for damages, seeks to disregard the corporate entity to hold Petland liable for PLC's debt, and alleges assignment of the lease from PLC to Petland, either formally or equitably. To support piercing the corporate veil and a finding that PLC was merely the alter ego of Petland, Chapel Ridge alleges that Petland and PLC knew when PLC entered the lease that PLC had no assets, no inventory, was insolvent, was unable to meet its financial obligations, operated no business other than holding leases, and never filed its own income tax returns, but did not disclose any of this to Chapel Ridge. As noted, Petland made the rent payments, not PLC, even though Petland wasn't a party to the lease; and Petland, not PLC, conducted business out of the leased premises. (DE 30-1 at 2, 6.)

PLC has answered the Complaint and asserted affirmative defenses, but Petland has moved to dismiss claiming that Chapel Ridge has failed to state a claim against it. After the motion to dismiss was fully briefed, I asked the parties for additional briefing on the question of whether Indiana or Ohio law applies to the issue of piercing the corporate veil to hold Petland liable for PLC's debt. The shopping center is in Indiana and the lease has a choice of law provision in favor of Indiana law, but the defendants are incorporated in Ohio. The parties

submitted additional briefing, and on the same day they did that, Chapel Ridge filed a Motion for Leave to File Amended Complaint. Petland opposes the amendment, claiming the proposed changes are futile.

Because the two pending motions are so closely intertwined, I am addressing them both in this Order.

**Choice of Law**

Because this is a case invoking diversity jurisdiction, my first task is to determine what law applies. In doing so, I must separately determine what law applies to each of the contractual and veil piercing issues. In doing so, I apply the conflict-of-laws rules of Indiana, the state in which I sit. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

The lease states that it "shall be governed by the laws of the state in which the Premises are located," meaning Indiana. This choice of law provision appears valid, and where the parties have bargained for the application of a particular state's laws, Indiana substantive law generally respects that bargain. *Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002). I see no reason not to adhere to that practice here, so Indiana law will govern my analysis of the contract, and its breach.

Veil piercing is a different kettle of fish because it doesn't depend on the contract. Instead, it depends on an entirely separate equitable doctrine. So the Indiana choice-of-law clause in the contract is not controlling. The lease's subject matter is in Indiana, Chapel Ridge is an Indiana company, and PLC and Petland are incorporated in Ohio, so both Indiana and Ohio may have an interest in having their state law apply.

Neither the parties nor I found a statement of settled law in Indiana directly addressing which state's law applies when the corporate veil is at risk of being pierced, so a little more legwork is required. To begin with, there is a basic rule – known as the internal affairs doctrine – which stands for the proposition that "a firm's state of incorporation [is] the source of rules about whether investors are liable for its debts." *Whitely v. Moravec*, 635 F.3d 308, 310 (7th Cir. 2011) (citing *Restatement (Second) of Conflict of Laws* § 307; Ind. Code § 23-1-49-5).

It is for this reason that the Seventh Circuit has said that "in the vast majority of situations, the law of the state of incorporation governs attempts to disregard the corporate entity." *Secon Serv. Sys. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 413 (7th Cir. 1988) (characterizing the import of Philip I. Blumberg, *The Law of Corporate Groups: Tort, Contract, and other Common Law Problems in the Substantive Law of Parent and Subsidiary Corporations* § 26.02 (1987)). So in the absence of governing state opinions, a trial court should "proceed from general principles if those principles are nearly universal, as here." *Secon Serv. Sys.*, 855 F.2d at 413 (citing *Havoco of America, Ltd. v. Hilco, Inc.*, 799 F.2d 349, 352-53 (7th Cir. 1986).

This is entirely sensible. After all, Ohio is the state that granted both Petland and PLC corporate status. The issue to be decided on the veil piercing claim is whether that corporate form should be disregarded. Ohio certainly has more of an interest in that determination than Indiana does. When it comes to the issue of whether the corporate form should be disregarded, it seems clear that the state of incorporation has the most interest in that determination. *See PNC Bank v. Hall*, No. 1:07-cv-992, 2010 U.S. Dist. LEXIS 107628, at *10 (S.D. Ind. Oct. 7, 2010) ("To determine whether the corporate veil should be pierced, a court must look to the law of the

state of the company's organization.") (citing *RSR Corp. v. Avanti Devel. Inc.*, No. IP 95-1359, 2000 U.S. Dist. LEXIS 14210, at *42 n.10 (S.D. Ind. Mar. 31, 2000)).

So Indiana law will apply to analysis of the contract and the alleged breach, but Ohio law will apply to the question of whether the corporate form may be disregarded here to allow liability to reach Petland.

## Motion to Amend

First up for consideration is Chapel Ridge's Motion to Amend. "[L]eave to amend a complaint should be freely granted when justice so requires, *see* Fed. R. Civ. P. 15(a), [although] the district court need not allow an amendment when there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860-61 (7th Cir. 2001) (citations omitted). The amendment would be futile if it "fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss." *Crestview Vill. Apts. v. HUD*, 383 F.3d 552, 558 (7th Cir. 2004) (quoting *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991)).

None of the factors favoring denying leave to amend are evident here. In its opposition to amendment, Petland argues only that the changes are futile, in effect saying that the Proposed Amended Complaint could not survive a motion to dismiss. I disagree, as I explain more fully below. I find that the proposed amended complaint does state a claim for which relief may be granted. Furthermore, the proposed amended complaint provides additional notice of the specifics of the claims to the defendants beyond the original complaint, which promotes the interests of justice.

I will note, however, for future clarity in this case, that "piercing the corporate veil," the title of the second cause of action in the Proposed Amended Complaint, is not actually a claim under Ohio law, but "a remedy encompassed within a claim." *RCO Int'l Corp. v. Clevenger*, 180 Ohio App. 3d 211, 214 (2008) (citing *Geier v. Natl. GG Industries, Inc.*, Lake App. No. 98-L-172, 1999 Ohio App. LEXIS 6263 (Dec. 23, 1999)). Here, the claim is breach of contract as alleged against PLC in the first cause of action. In other words, veil piercing is a way to reach through the corporate form to impose liability on Petland for the breach, although Petland was not a party to the lease.

I also view the claim of "Assignment" – the third cause of action in the proposed amended complaint – the same way. It is a method of recovery for the underlying claim of breach of contract. It is another means of transferring liability from PLC to Petland, except instead of transferring liability for nonpayment after the fact, the assignment theory transfers to Petland the underlying obligation to pay rent, making Petland directly liable for nonpayment. Under the lease terms, of course, assignment without the requisite permissions may be a separate breach, but it remains a claim for breach of contract.

**Motion to Dismiss**

In order to survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). I must accept all factual allegations as true and draw all reasonable inferences in the complainant's favor, but I don't need to accept threadbare legal conclusions supported by purely

6

conclusory statements. *See Iqbal*, 556 U.S. at 678. The first step in my analysis is to identify and disregard all "allegations in the complaint that are not entitled to the assumption of truth," especially including any legal conclusions. *Id.* at 680-81. Then I must look at the remaining allegations to determine whether they *plausibly* – and not merely possibly or conceivably – suggest an entitlement to relief. *Id.* at 681, 683. This task invariably requires me to draw on my judicial experience and common sense. *Id.* at 679.

PLC has answered the Complaint, so the first claim, for breach of lease by PLC, is not at issue in this Motion. What is at issue is Petland's request for dismissal of the second and third claims brought against it. But to repeat, the underlying claim for each is still breach of contract, and the Motion to Dismiss is really directed at Chapel Ridge's theories for recovery from Petland.

### A. Cause of Action Number 2 – Piercing the Corporate Veil

As discussed above, Ohio substantive law applies to the veil-piercing claim because the defendants are incorporated in Ohio. Ohio's Supreme Court has established a test for piercing the corporate veil, which is narrower than that recognized by Indiana courts.[1] Under Ohio law "[t]he corporate form may be disregarded and individual shareholders held liable for wrongs committed by the corporation when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and

---

[1] Under Indiana law, "[t]he party seeking to pierce the corporate veil bears the burden of establishing that: (1) the corporate form was 'so ignored, controlled or manipulated that it was the mere instrumentality of another' and (2) 'that the misuse of the corporate form would constitute a fraud or promote injustice.'" *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282-83 (Ind. Ct. App. 2012) (quoting *Escobedo v. BHM Health Assocs., Inc.*, 818 N.E.2d 930, 933 (Ind. 2004)).

(3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Dombroski v. Wellpoint, Inc.*, 119 Ohio St. 3d 506, 510-11, 2008-Ohio-4827, 895 N.E.2d 538 (Ohio 2008) (quoting *Belvedere Condo. Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St. 3d 274, 288-89, 1993-Ohio-119, 617 N.E.2d 1075 (1993)). Under this *Belvedere* test, as modified by *Dombroski*, the second prong requires demonstration of "fraud, an illegal act, or a similarly unlawful act," bearing in mind that the corporate veil may only be pierced "in instances of extreme shareholder misconduct." *Dombroski*, 119 Ohio St. 3d at 513. The Ohio Supreme Court chose a slightly narrower standard of misconduct than Indiana courts have for veil piercing: merely unjust or inequitable acts don't qualify in Ohio because Ohio courts worry that veil piercing could happen every time a corporation is sued, since "nearly every lawsuit sets forth a form of unjust or inequitable action." *Dombroski*, 119 Ohio St. 3d at 513.

In support of the first prong, Petland's control over PLC, Chapel Ridge alleges: "Petland is the sole shareholder of PLC" and "Petland exercised complete control over and dictated the actions of PLC"; PLC has never been capitalized or owned assets, is insolvent, and has never filed tax returns; the principal corporate offices of the defendants are at the same address; and "the officers and directors of PLC and Petland are the same or substantially similar . . . ." (DE 30-1 at ¶¶ 3, 4, 5, 6 and 9.) This is more than adequate to satisfy the first prong.

As for the third prong – whether Chapel Ridge sustained injury as a result of Petland's control of PLC and the wrong done – it is easily met here. PLC welched on the lease it signed with more than six years left on it. Petland and PLC didn't even pay for all of the time they used the property before they vacated. Because Petland kept PLC insolvent, Chapel Ridge has no recourse without reaching past PLC to Petland. (DE 30-1 at ¶¶ 11, 14, 18, 19 and 22.) Chapel

8

Ridge is out a lot of money, and its lack of recourse against PLC is the result of Petland's alleged deliberate misuse of the corporate form in contracting with Chapel Ridge.

The second prong – a showing of fraud, an illegal act, or a similarly unlawful act – is more complicated. Taking Chapel Ridge's allegations as true, here is the plausible story that Chapel Ridge proffers in its Proposed Amended Complaint with respect to fraud or an unlawful act: PLC entered the lease, under Petland's control and at its direction, with no intention of *ever* having anything to do with the property, neither partaking in the benefits of the lease nor meeting its obligations. In my view, this provides a basis for meeting the second prong of the *Belvedere* test as modified by *Dombroski* under the fraud designation, or perhaps as one of the egregious acts Ohio's Supreme Court referenced. This case isn't about simple breach of contract or true inability to pay – something was rotten before the lease was even signed, or at least that's what Chapel Ridge alleges.

I see at least two separate wrongs potentially committed against Chapel Ridge that might qualify as unlawful and/or egregious, pending the presentation of facts, of course: (1) Petland structured the deal and used PLC to allow it a unilateral, cost-free, early exit from the lease; and (2) Petland caused PLC to enter the contract intending from the start to violate it by having an entity other than the lessor pay the bills and use the space. Both plausibly may satisfy the second *Belvedere-Dombrowski* prong.

On the first point, the allegations plausibly permit the inference that PLC was created specifically to allow Petland to enter into a ten-year lease, but to have an easy, unilateral escape from the contract if the store failed and Petland didn't want it for the full ten years. Petland makes almost this very argument in its Motion to Dismiss, when it says that "payments were

9

made under the lease for several years" until "the store later failed and the space vacated," pointing out that corporate entities exist to shield shareholders from liability. (DE 13 at 6.) But this doesn't mean that parties should be able to create corporate entities to avoid paying rent if business is bad and they no longer feel inclined to do so; if Petland didn't want the risk of a ten-year lease, it didn't have to enter one, and if it didn't want to operate the store at a loss it had the right under the lease to find a subletter for the remainder of the ten years. (DE 30-1 at § 10.[2])

As for the second point, the lease allowed subletting, but only with either the landlord's consent (for third-party subletters) or after submitting financial statements and a personal guarantee on the lease (for subletters affiliated with PLC). *Id.* The latter situation would likely have been applicable, but obviously Petland's signing a guarantee on the lease would have locked Petland's escape hatch, defeating the purpose of using PLC. So Petland and PLC went ahead, PLC signed the lease, and Petland reaped the benefits and paid the rent for as long as there were benefits to reap, thereby denying Chapel Ridge the benefit of its bargain, which included the right to choose its tenant. *Collins v. McKinney*, 871 N.E.2d 363, 371 (Ind. Ct. App. 2007) ("[T]he Indiana Supreme Court[3] recognized long ago that the purpose of a covenant against assigning and subletting in a lease is 'to reserve to the lessor the right to say who should occupy the premises.'") (quoting *Indianapolis Mfg. & Carpenters' Union v. The Cleveland, C., C., & I. Ry. Co.*, 45 Ind. 281, 288 (1873)).

---

[2]I am permitted to consider the lease at this stage because it is attached as an exhibit to the complaint and proposed amended complaint and incorporated therein by reference. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)) ("Federal courts in diversity actions apply state substantive law and federal procedural law."); Fed. R. Civ. P. 10(c); *Beanstalk Grp. v. Am Gen. Corp.*, 283 F.3d 856, 858 (7th Cir. 2002).

[3]We're back to Indiana law here when we talk about bases for a claim of breach of contract.

Petland argues that, if pleading fraud as the basis for piercing the corporate veil, Chapel Ridge must plead with particularity under Fed. R. Civ. P. 9(b), offering the who, what, when, where and how of the fraud allegations. For pleading standards we turn to Seventh Circuit procedural law applying the Federal Rules of Civil Procedure. Unfortunately, the Seventh Circuit hasn't opined on the appropriate pleading standard for veil piercing when fraud allegations are in play. And other courts are all over the board on the issue. Some courts have applied the Rule 9(b) particularity requirements to fraud-based veil piercing arguments. *See, e.g.*, *Southeast Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 672 (6th Cir. 2006) (*citing Bd. of Trustees of Teamsters Local v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002)); *EEOC v. Global Horizons, Inc.*, 2012 U.S. Dist. LEXIS 146968, at *16-17 (D. Haw. Oct. 9, 2012) ("Despite [defendant's] claim that '[c]ourts regularly impose Rule 9(b)'s heightened pleading standard upon fraud-based attempts to disregard the corporate form,' [] there is no general consensus as to whether veil piercing claims premised upon fraud must be pled with particularity pursuant to Rule 9(b). The Ninth Circuit has not addressed this question . . . ."); *RAM Constr. Servs. of Mich. v. TH Restoration, Inc.*, 2012 U.S. Dist. LEXIS 70255, at *8 (N.D. Ohio May 21, 2012); *Schwan v. CNH Am. LLC*, 2006 U.S. Dist. LEXIS 28516, at *64-65 (D. Neb. May 4, 2006); *Golding v. Imperial Sterling*, 2001 U.S. Dist. LEXIS 25226, at *11-12 (S.D. Fla. June 28, 2001).

Other courts have applied only the lower, notice requirements of Fed. R. Civ. P. 8(a). *See, e.g.*, *Burford v. Acc'tg Practice Sales, Inc.*, 2013 U.S. Dist. LEXIS 66827, at *10 (S.D. Ill. May 10, 2013) ("[A]llegations to support piercing the corporate veil need not be pled with the specificity required by Federal Rule of Civil Procedure 9(b); mere notice pleading under Rule 8(a) is sufficient.") (*citing Flentye v. Kathrein*, 485 F. Supp. 2d 903, 912-13 (N.D. Ill. 2007));

11

*Time Warner Cable, Inc. v. Networks Grp.*, LLC, 2010 U.S. Dist. LEXIS 93855, at *12-13 (S.D.N.Y. Sept. 9, 2010) ("The defendants argue that to the extent the plaintiff alleges fraud, Rule 9(b) applies. . . . Several district courts in this district have applied Rule 9(b) to claims to pierce the corporate veil that are based on a defendant's fraudulent conduct. *See, e.g.*, *DirecTV Latin America LLC v. Park*, 610 LLC, 691 F. Supp. 2d 405, 432 (S.D.N.Y. 2010); *In re Currency Conversion Antitrust Litig.*, 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003). Until the Court of Appeals revisits its holding in [*Int'l Controls Corp. v. Vesco*, 490 F.2d 1334, 1351 (2d Cir. 1973)], however, Rule 8 is the appropriate standard to weigh the sufficiency of the plaintiff's allegations to pierce the corporate veil."); *Taurus IP, LLC v. DaimlerChrysler Corp.*, 519 F. Supp. 2d 905, 925 (W.D. Wis. 2007), *aff'd*, *Taurus IP, LLC v. DaimlerChrysler Corp.*, 2013 U.S. App. LEXIS 16507 (Fed. Cir., Aug. 9, 2013) (piercing the corporate veil is an equitable remedy, not a claim, and Rules 8 and 9 require litigants to plead claims, not remedies); *Montoya v. Richesin*, 2007 Bankr. LEXIS 3391, at *23 (Bankr. D.N.M. Oct. 3, 2007); *Wiebe v. Benefits Mgmt. Corp.*, 1993 U.S. Dist. LEXIS 9706, at *3-4 (D. Kan. June 17, 1993) (collecting cases)).

I don't need to take a side here because I find that, even under the heightened pleading standards, Chapel Ridge meets its pleading burden on this Motion to Dismiss. I don't see a particularity problem under Rule 9(b) with the Amended Complaint, to which the lease is attached and incorporated by reference. Here's the fraud as Chapel Ridge presents it: (a) PLC represented in the lease that it was going to be Chapel Ridge's tenant; (b) the identity of one's counter-party/tenant is a material term in a contract; (c) PLC and Petland knew all along that PLC had no business to put in the space or money to pay rent, and no intention to ever do either; (d) PLC and Petland intended for Chapel Ridge to rely upon the misrepresentation to induce it to

sign the lease; (e) which Chapel Ridge reasonably did; and (f) Chapel Ridge has been left high and dry with several years left on a lease, with its only recourse the non-existent bank account of a non-operating company, and furthermore Chapel Ridge was denied the benefit of choosing its tenant. *Collins v. McKinney*, 871 N.E.2d 363, 371 (Ind. Ct. App. 2007) (an unapproved sublease flouting a contractual restriction and the resulting loss of ability to "assess and control . . . potential liabilities" qualifies as damage for the purposes of stating a claim for breach of contract). The particulars not stated in the proposed amended complaint are contained in the signed lease, attached as an exhibit.

An Ohio district court addressing a motion to dismiss in a case with similar circumstances also found no particularity problem under Rule 9(b) with an attempt to pierce the corporate veil via a fraud allegation. In *Ruffing v. Masterbuilt Tool & Die, LLC*, Ruffing sued Masterbuilt and its parent and sister companies for Masterbuilt's alleged breach of contract under a veil-piercing theory. Hawthorn Manufacturing Corporation bought Red Rock Stamping, LLC, where Ruffing worked. As part of the purchase, Hawthorn allegedly agreed to offer Ruffing a job. It didn't, but its subsidiary Masterbuilt did. The court described Masterbuilt as a "peculiar entity, as it 'was not capitalized, had no banking or checking account, had no assets, and had no employees other than Ruffing.'" *Ruffing v. Masterbuilt Tool & Die, LLC*, 2009 U.S. Dist. LEXIS 4754, at *5 (N.D. Ohio Jan. 23, 2009). Red Rock, rather than Masterbuilt, paid Ruffing's salary, and Ruffing did work for other Hawthorn subsidiaries, but none for Masterbuilt, which seemed not to conduct any business, generate any revenues, and have no liabilities other than Ruffing's contract. *Id.* Applying Ohio veil-piercing law and Fed. R. Civ. P.

13

9(b), the court held that the plaintiff had pled fraud sufficiently to continue with his veil piercing argument:

> The Court takes note of Ruffing's specific allegations that despite having a contract that was ostensibly with Masterbuilt, Ruffing was always paid by Red Rock, that Masterbuilt (the company with whom he signed a contract) was not "real," and that various aspects of the contract appear to be fraudulent to the extent that Masterbuilt was a company with no assets, liabilities, products, or employees (other than Ruffing). This is more than enough particularity to satisfy the heightened pleading requirements for a claim of fraud.

*Id.* at 18-19, 46, 51.

### B. Cause of Action Number 3 - Assignment of the Lease

In reviewing the third cause of action, newly added in the Proposed Amended Complaint, alleging assignment of the lease, we switch from Ohio law back to Indiana law as we deal with the lease and performance under it rather than veil piercing. Chapel Ridge alleges that PLC was allowed to assign the lease, and it did so to its parent Petland, either directly or equitably, as evidenced by the fact that Petland controlled the leased premises and took responsibility for PLC's obligations under the lease (until it ceased taking responsibility). (DE 30-1 at ¶ 32.) At this stage, Chapel Ridge need not plead detailed facts, and indeed it cannot be expected to know, before conducting discovery, the details of the corporate relationship between Petland and PLC (e.g., whether there was some formal assignment of the lease between the two related entities that was not shared with their landlord) or what other indicia of control of the premises (e.g., insurance policies) might show. At this point, Chapel Ridge can plead both actual assignment and equitable assignment as alternatives.

Indiana courts have long recognized the theory of equitable transfer of a lease. In determining whether there has been an assignment in the absence of a written agreement, the

Indiana Court of Appeals has considered whether the assignee or assignor was in primary control of the premises; which party was responsible for the lease obligations, had possession of the property, and paid rent; and whether there was some relationship other than assignee/assignor that explained the situation (like a management agreement). *Collins v. McKinney*, 871 N.E.2d 363, 373-74 (Ind. Ct. App. 2007) (holding that a jury could have found that the arrangement in question constituted an equitable assignment of the sublease) (citing *Indianapolis Mfg. & Carpenters' Union v. The Cleveland, C., C., & I. Ry. Co.*, 45 Ind. 281, 288 (1873)). Taking Chapel Ridge's allegations as true, there may have been an equitable assignment of the lease from PLC to Petland. The proof of the pudding will be in its taste, and that is what discovery is for. The allegations are certainly sufficient to survive a Motion to Dismiss.

## Conclusion

For the foregoing reasons, plaintiff Chapel Ridge Investments, LLC's Motion for Leave to File Amended Complaint (DE 30) is **GRANTED**, and Petland's Motion to Dismiss for Failure to State a Claim (DE 12) is **DENIED**. Chapel Ridge is **ORDERED** to file its corrected amended complaint and Defendants are **ORDERED** to answer the amended complaint within 14 (fourteen) days after it is served on them, pursuant to Fed. R. Civ. P. 15(a)(3).

**SO ORDERED**.

ENTERED: December 4, 2013

/s/ Philip P. Simon  
Philip P. Simon, Chief Judge  
United States District Court